**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, | |
| Plaintiff, | |
| v. | Case No. 2:25-cv-712 |
| XIRGO TECHNOLOGIES, LLC; XIRGO HOLDINGS, INC., | |
| Defendants. | |
| OBD SENSOR SOLUTIONS LLC, | |
| Plaintiff, | |
| v. | Case No. 2:25-cv-713 |
| XIRGO TECHNOLOGIES, LLC; XIRGO HOLDINGS, INC., | |
| Defendants. | |

## OPINION & ORDER

Defendants Xirgo Technologies, LLC and Xirgo Holdings, Inc. (together, "Xirgo"), move to transfer to the Northern District of Illinois and to stay the cases pending determination of the motions. No. 2:25-cv-712, ECF Nos. 25 (motion), 26 (memorandum); No. 2:25-cv-713, ECF Nos. 27 (motion), 28 (memorandum). Because the accused products overlap and the parties' filings are substantially similar, the Court will analyze and decide the motions to transfer and stay in each case together. For the reasons stated below, the motions will be **DENIED**.

## I.    BACKGROUND

Plaintiffs Fleet Connect Solutions LLC and OBD Sensor Solutions are limited liability companies formed under the laws of Texas with places of business in Austin, Texas. No. 2:25-cv-712, ECF No. 1 ¶ 3; No. 2:25-cv-713, ECF No. 1 ¶ 3. Xirgo Technologies and Xirgo Holdings are limited liability companies organized under the laws of Delaware and Indiana, respectively, and both are headquartered in Rolling Meadows, Illinois. No. 2:25-cv-712, ECF No. 1 ¶¶ 4, 6; No. 2:25-cv-713, ECF No. 1 ¶¶ 4, 6. The defendants' Illinois location is home to 28 employees, and they also have an office in Minneapolis, Minnesota with 21 employees, and one in Reston, Virginia with six employees. No. 2:25-cv-712, ECF No. 26 at 9, ECF No. 26-1 ¶¶ 5–7; No. 2:25-cv-713, ECF No. 28 at 9, ECF No. 28-1 ¶¶ 5–7.

The plaintiffs filed these patent infringement suits on November 3, 2025. No. 2:25-cv-712, ECF No. 1; No. 2:25-cv-713, ECF No. 1. Fleet Connect brings seven counts of patent infringement—one count for each of seven patents—regarding wireless communication devices related to Xirgo's fleet management platform and tracking solutions. No. 2:25-cv-712, ECF No. 1 ¶¶ 22–23, 26–103. OBD Sensor brings one count of patent infringement—for one patent—regarding Xirgo's vehicle tracking devices and associated software and applications. No. 2:25-cv-713, ECF No. 1 ¶¶ 22, 24–34. The accused products identified in each suit partially overlap. *Compare* No. 2:25-cv-712, ECF No. 1 ¶ 22 (identifying in part XT2600, XT2400, XT2500, XT6300), *with* No. 2:25-cv-713, ECF No. 1 ¶ 22 (identifying in part the same four products).

On February 9, 2026, the defendants filed motions to transfer the cases to the Northern District of Illinois and to stay the cases pending resolution of their motions. No. 2:25-cv-712, ECF No. 25; No. 2:25-cv-713, ECF No. 27.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh, Corp.*, 487 U.S. 22, 29 (1988) (quotation marks and citation omitted).

The burden is on the movant to show that transfer is proper. *Cognitronics Imaging Sys., Inc. v. Recognition Rsch. Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000). "In a patent infringement action, motions to transfer venue pursuant to Section 1404(a) are governed by the law of the regional circuit in which the Court sits." *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 867 (E.D. Va. 2013); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

To determine whether transfer of venue is appropriate, a district court must consider: (1) whether the claims might have been brought in the transferee forum and (2) whether the case should ultimately be transferred to the transferee forum. *Virginia Innovation Scis.*, 928 F. Supp. 2d at 867. As part of the second inquiry, district courts in this Circuit consider: "(1) the weight accorded to [the] plaintiff's

choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

## III.   ANALYSIS[1]

### A.   Whether the Claims Might Have Been Brought in the Transferee Forum

Venue in patent infringement lawsuits is proper in any "district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporate defendant resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c); *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 631 (E.D. Va. 2003).

Xirgo's principal place of business—its headquarters—is located outside of Chicago in Rolling Meadows, Illinois, and so it is clear that this patent infringement action "might have been brought" in the Northern District of Illinois. No. 2:25-cv-712, ECF No. 1 ¶¶ 4, 6; No. 2:25-cv-713, ECF No. 1 ¶¶ 4, 6; *see Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011) (identifying a "principal place of business" as a "paradigm bas[i]s for the exercise of general jurisdiction") (quotation marks and citation omitted). The plaintiffs do not argue to the contrary. *See generally* No. 2:25-cv-712, ECF No. 27; No. 2:25-cv-713, ECF No. 29.

---

[1] The defendants' requests to stay the cases pending resolution of whether to transfer the actions are mooted by this Opinion and Order's resolution of the motions. 2:25-cv-712, ECF No. 26 at 13; 2:25-cv-713, ECF No. 28 at 12–13.

**B.     Whether the Claims Should Be Transferred**

On balance, the Section 1404(a) factors weigh in favor of keeping the claims in this District. The Court will separately analyze each factor.

### i.     *Plaintiffs' Choice of Venue*

Ordinarily, a plaintiff's choice of forum is "entitled to substantial weight." *Koh*, 250 F. Supp. 2d at 633. However, a plaintiff's chosen venue "is not given such substantial weight when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum." *Id.* (collecting cases stating the same). Additionally, multiple cases in this District have held that "in patent cases [] it may be appropriate to afford a plaintiff's choice of forum minimal weight, when the plaintiff has few business activities in the district and is appropriately classified as a non-practicing entity." *Glob. Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 896 (E.D. Va. 2015) (quotation marks and citations omitted) (collecting cases). In a patent infringement action, "the preferred forum is that which is the center of the accused activity." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (internal quotations and citation omitted).

Here, the plaintiffs' choice of this District is afforded minimal weight. The plaintiffs were founded under the laws of Texas with registered office addresses in Texas and do not allege that they conduct any business in this District. No. 2:25-cv-712, ECF No. 1 ¶ 3; No. 2:25-cv-713, ECF No. 1 ¶ 3; *See Glob. Touch*, 109 F. Supp. 3d at 898 ("[A]s a non-practicing entity that does not even maintain an office in this

district with a single full-time employee, GTS's choice of forum is afforded minimal weight by the Court.").[2]

The plaintiffs' claims also do not appear to substantially relate to this District. The plaintiffs allege: (1) the defendants have a place of business in Reston, Virginia from which they "have committed acts of patent infringement," No. 2:25-cv-712, ECF No. 1 ¶¶ 9, 12, 16; No. 2:25-cv-713, ECF No. 1 ¶¶ 9, 12, 16; (2) the defendants "offer[] products and services, including through the use of the [a]ccused [p]roducts defined below, and conducts business in this District," No. 2:25-cv-712, ECF No. 1 ¶¶ 13–15, 18; No. 2:25-cv-713, ECF No. 1 ¶¶ 13–15, 18; and (3) the defendants "ship and cause to be shipped" infringing products and materials into this District and "market, sell, and deliver" the accused products in this District, No. 2:25-cv-712, ECF No. 1 ¶¶ 19–20; No. 2:25-cv-713, ECF No. 1 ¶¶ 19–20.

But none of these allegations are "unique to Virginia." *Glob. Touch Sols.*, 109 F. Supp. 3d at 898 ("[T]he lack of any allegedly infringing activity occurring in Virginia that is not also occurring in any other state with a large customer base for electronics" weighs against the plaintiff's initial choice of forum.); *see also Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938–39 (E.D. Va. 2001) ("[T]he Court discounts Defendant's sales volume in Virginia as a basis for claiming Virginia the

---

[2] The defendants describe the plaintiffs as non-practicing entities. No. 2:25-cv-712, ECF No. 26 at 7, 10; No. 2:25-cv-713, ECF No. 28 at 6–7, 9 (describing the plaintiff as a "non-practicing entity"). The plaintiffs do not dispute this description, *see* No. 2:25-cv-712, ECF No. 27; No. 2:25-cv-713, ECF No. 29, but without further information on this characterization, the Court declines to consider this fact as part of its analysis.

home forum because Defendant's sales are not unique to Virginia."). And the allegation that the defendants merely have a place of business in Virginia is not enough to establish relevance to this District without an indication of whether any of the accused products were designed or manufactured here. *See NanoEntek, Inc. v. Bio–Rad Lab'ys, Inc.*, No. 2:11-cv-427, 2011 WL 6023189, at \*3 (E.D. Va. Dec. 2, 2011) ("Mere sales and marketing activity does not entitle [the plaintiff's] choice of forum to substantial weight when none of the infringing products were developed or produced in this District.").

Along with their briefing, the plaintiffs provide evidence to bolster their allegations, but such evidence falls short of establishing relevance to this District. *Long v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2024 WL 23149, at \*2 (E.D. Va. Jan. 2, 2024) ("In deciding a motion to transfer . . . the Court may consider evidence outside the pleadings, including affidavits and declarations.").

First, the plaintiffs argue that the defendants' Reston office was the former headquarters of Elastic M2M, a software company acquired by Xirgo's predecessor.[3]

---

[3] The parties dispute whether the Elastic M2M software platform is relevant to this case. The plaintiffs argue that the accused products include both the hardware and the software components of the fleet management system, and so Elastic M2M is necessarily relevant. No. 2:25-cv-712, ECF No. 27 at 5; No. 2:25-cv-713, ECF No. 29 at 5. On the other hand, the defendants argue that the accused products are hardware devices and that the Elastic M2M software platform is entirely separate. No. 2:25-cv-712, ECF No. 30 at 5–6, ECF No. 30-1 ¶¶ 2–4 ("The Accused Products and the Elastic M2M platform are separate and distinct" with "a separate technology stack and separate development team[s] with different skill sets."); No. 2:25-cv-713, ECF No. 30 at 5–6, ECF No. 30-1 ¶¶ 2–4. The plaintiffs merely explain that the hardware and software within the accused products are related, conclusively stating that "the features and functionalities of the Elastic M2M software platform are directly relevant to infringement issues at the heart of this case." No. 2:25-cv-712, ECF No.

No. 2:25-cv-712, ECF No. 27 at 3–4, ECF No. 27-2; No. 2:25-cv-713, ECF No. 29 at 3–4, ECF No. 29-2. However, "past activities may be insufficient to establish a plaintiff's connection to a forum if such activities do not constitute conditions that existed when [the] suit was instituted." *Virginia Innovation Scis.*, 928 F. Supp. 2d at 869. Therefore, the fact that ElasticM2M formerly existed in the Reston office is not relevant for analyzing the current significance of the Reston office. And in fact, Elastic M2M's headquarters are now in Rolling Meadows, Illinois, and its "documents and key personnel are located there." ECF No. 30-1 ¶ 9.

Second, the plaintiffs identify eight employees listed on Elastic M2M's LinkedIn page as employees of the defendants in the Reston area and claim that their roles reveal that they are relevant to the products at issue. No. 2:25-cv-712, ECF No. 27 at 4, ECF Nos. 27-6–27-9; No. 2:25-cv-713, ECF No. 29 at 4, ECF Nos. 29-6–29-9. But LinkedIn pages are not enough to establish relevance, as the profiles do not reveal whether the employees worked on the accused products, let alone whether their potential testimony will be specifically relevant to this case. *See Monarch Networking Sols. LLC v. Juniper Networks, Inc.*, No. 1:23-cv-670, 2023 WL 11717092,

---

27 at 5–6; No. 2:25-cv-713, ECF No. 29 at 5–6. Such an explanation does not demonstrate relevance.

And even if the Elastic M2M software platform had some relevance, it is clear that Reston is not the "focal point of the infringing [products]" nor is it "the hub of activity centered around [their] production." *Monarch Networking Sols.*, 2023 WL 11717092, at *4 (quoting *GTE Wireless,* 71 F. Supp. 2d at 519). For example, the defendants declare that three employees in Illinois and three employees in Minneapolis are responsible for the sale and development of the accused products and that none of the employees in Reston have worked on the accused products. ECF No. 26-1 ¶¶ 5–7.

at *7 (E.D. Va. Oct. 3, 2023) ("[The plaintiff's] witness list is primarily based on employees' LinkedIn profiles and YouTube videos. . . . But mere knowledge of a feature does not make an employee a necessary or even likely trial witness. . . . [The plaintiff's] proposed witnesses possess no special knowledge of the Accused Products to distinguish them from [the defendant's] employees throughout the nation.").

Finally, the plaintiffs argue that third-party company u-blox is "a main Xirgo supplier for wireless chips used in the" products and is located in this District. No. 2:25-cv-712, ECF No. 27 at 9; No. 2:25-cv-713, ECF No. 29 at 9. However, the plaintiffs do not explain the relevance of u-blox to this infringement action beyond conclusively stating that it will be relevant to this action. No. 2:25-cv-712, ECF No. 27 at 9; No. 2:25-cv-713, ECF No. 29 at 9; *see Monarch Networking Sols.*, 2023 WL 11717092, at *5 ("[The plaintiff] offers no evidence tying [the defendant's] partners in either district to acts of infringement."). On the other hand, the defendants explain that "[t]o the extent wireless chip suppliers have any relevance to this case," Quectel is in fact the dominant chip manufacturer for the accused products, not u-blox. No. 2:25-cv-712, ECF No. 30 at 8–9; ECF No. 30-1 ¶ 10; No. 2:25-cv-713, ECF No. 30 at 8–9, ECF No. 30-1 ¶ 10. Thus, given the information before it, the Court concludes that u-blox's location does not establish that the claims at issue here have a substantial relation to this District.

Overall, it is clear that the "center of the accused activity" is not this District, *Acterna*, 129 F. Supp. 2d at 939 (citation omitted), and the choice of forum factor weighs in favor of transfer.

9

### ii.    Witness Convenience and Access

The defendants must "demonstrate that the Eastern District of Virginia is an inconvenient forum in which to litigate, not simply that the [Northern District of Illinois] would be more convenient." *Virginia Innovation Scis.*, 928 F. Supp. 2d at 870–871 (quotation marks and citation omitted). "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636. However, "it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material." *Id.* at 636–37.

Here, the defendants explain that their Illinois office has 28 employees, three of whom are part of the sales team for the accused products, and who are "likely" to have access to relevant documents. No. 2:25-cv-712, ECF No. 26 at 9, ECF No. 26-1 ¶ 6; ECF No. 2:25-cv-713, ECF No. 28 at 9, ECF No. 28-1 ¶ 6. Additionally, the Minneapolis office has 21 employees, three of whom are engineers "involved in the development" of the accused products and who also "likely" have relevant documents. No. 2:25-cv-712, ECF No. 26 at 9, ECF No. 26-1 ¶ 7; ECF No. 2:25-cv-713, ECF No. 28 at 9, ECF No. 28-1 ¶ 7. Illinois is more convenient to reach than Norfolk from Minneapolis, as travel to Norfolk would require a flight and an overnight stay,

whereas travel to Chicago might not. No. 2:25-cv-712, ECF No. 26 at 9, ECF No. 30 at 10; ECF No. 2:25-cv-713, ECF No. 28 at 9, ECF No. 30 at 11.

But the issue with the defendants' argument is that they do not demonstrate that Norfolk would be particularly *inconvenient* for any potential witnesses, merely that Illinois would be *more convenient*. *Virginia Innovation Scis.*, 928 F. Supp. 2d at 870–871.

On the other hand, the plaintiffs point to the presence of u-blox in this District as the sole consideration for witness convenience. No. 2:25-cv-712, ECF No. 27 at 10; No. 2:25-cv-713, ECF No. 29 at 10. But as explained above, absent an explanation as to the relevance of u-blox to these actions, the mere fact that u-blox is located in this District does not move the needle.

Because neither party has provided the Court with evidence as to the specific relevance of any witness, and the defendants have not demonstrated that this District would be an *inconvenient* forum for potential witnesses, this factor is neutral.

### iii.    *Party Convenience*

Fleet Connect is located in Texas and its two principles are located in New Jersey. No. 2:25-cv-712, ECF No. 1 ¶ 3, ECF No. 27-15 at 2; No. 2:25-cv-713, ECF No. 1 ¶ 3, ECF No. 29-15 at 2. While travel "from New Jersey to Norfolk, Virginia is approximately half the distance as compared to travel to Chicago, Illinois," No. 2:25-

11

cv-712, ECF No. 27 at 11; No. 2:25-cv-713, ECF No. 29 at 11, either location involves significant travel from New Jersey.

On the other hand, as explained above, the vast majority of the defendants' employees are significantly closer to Chicago than Norfolk. While six of the defendants' employees are based in Reston, Virginia, the defendant's headquarters are only 30 miles from the Northern District of Illinois, placing the relevant witnesses within the subpoena power of that court. No. 2:25-cv-712, ECF No. 30 at 12; No. 2:25-cv-713, ECF No. 30 at 13. Additionally, the defendants' office in Minneapolis is significantly closer to Chicago than Norfolk. No. 2:25-cv-712, ECF No. 26 at 9; No. 2:25-cv-713, ECF No. 28 at 9.

As with the witness convenience and access factor, because neither party has provided specific information on the relevance of any particular employee's testimony, the party convenience factor is neutral.

### iv.    Interest of Justice

The "interest of justice" factor includes circumstances such as "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties[,] and the possibility of harassment." *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988). The "most prominent . . . elements" in this assessment are "judicial economy and the avoidance

12

of inconsistent judgments." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006).

The existence of a similar patent infringement action between the same parties and involving the same products, *Fleet Connect Solutions LLC v. Xirgo Techs., LLC, et al.*, 2:25-cv-837 (E.D. Va.), strongly supports keeping the cases together in this District. Courts in this District have repeatedly stressed that "judicial economy and the avoidance of inconsistent judgments" counsels keeping related patent cases together. *Glob. Touch Sols.*, 109 F. Supp. 3d at 904–05 (discussing the importance of keeping patent infringement cases involving the same products together); *CIVIX-DDI, LLC v. Loopnet, Inc.*, No. 2:12-cv-2, 2012 WL 3776688, at *7 (E.D. Va. Aug. 30, 2012) (finding the existence of two related pending cases in the transferee forum weighed heavily in favor of transfer); *see In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) ("[I]t is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of paramount consideration, and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result.") (quotation marks and citation omitted). Because the defendants have not moved to transfer No. 2:25-cv-837 to the Northern District of Illinois, the interest of justice factor weighs heavily in favor of these cases remaining in this District to keep the three related matters together.[4]

---

[4] The plaintiffs also argue that the "interest in deciding a local controversy" and the fast docket conditions in this District weigh heavily against transfer. No. 2:25-cv-712, ECF No. 27 at 12–13; No. 2:25-cv-713, ECF No. 29 at 12–13. But because these are

\* \* \*

While the plaintiff's choice of forum factor weighs in favor of transfer, and the witness and party convenience factors are neutral, the interest of justice factor strongly counsels in favor of keeping the cases in this District for judicial economy and to avoid inconsistent judgments.

Therefore, on balance the Section 1404(a) factors weigh in the plaintiffs' favor.

## IV.    CONCLUSION

Defendants Xirgo Technologies, LLC and Xirgo Holdings, Inc.'s motions to stay and transfer (2:25-cv-712, ECF No. 25; 2:25-cv-713, ECF No. 27) are **DENIED**.

**IT IS SO ORDERED**.

_____ /s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
June 1, 2026

---

patent infringement cases, "[t]his Court is no better or worse equipped than any other U.S. district court" to handle them. *Acterna*, 129 F. Supp. 2d at 940. In other words—these are not local controversies. And the speed of the docket in this District is not a sufficient reason to deny transfer. *See Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) ("When a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice is not served.") (quotation marks and citation omitted).

14